UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Morris-Rivers, LLC, et al.,<br><br>　　　Plaintiffs<br><br>v.<br><br>Sonic Cavitation, LLC, et al.,<br><br>　　　Defendants | 2:16-cv-02877-JAD-PAL<br><br>**Order Denying Emergency Ex Parte Motion for Temporary Restraining Order**<br><br>[ECF No. 3] |

　　　Plaintiff-investors bring this action for declaratory and injunctive relief against Sonic Cavitation, LLC and related companies to recoup their investments. Plaintiffs have filed an emergency ex parte motion for a temporary restraining order seeking to enjoin defendants from destroying or relocating their physical assets, which are allegedly the only assets available to satisfy defendants' loan obligations to plaintiffs and over which plaintiffs' loan agreements grant them a lien. Having reviewed plaintiffs' complaint, supporting exhibits, motion for temporary restraining order, and supporting declaration, I find that the plaintiffs have not met the standard for obtaining an emergency temporary restraining order without notice, or even at all. I therefore deny the motion.

## Background

　　　Plaintiffs sue Sonic Cavitation Limited International, Sonic Cavitation, LLC, and Sonic Cav. LLC, the latter two of which plaintiffs entered into convertible bridge-loan agreements with. Defendants developed and sought investors for Sonic Cavitation, a patented water-purification technology.[1] Plaintiffs' loan agreements provide that, at the end of the one-year loan terms, Sonic Cav must pay its lenders 120% of the loan amount unless the lenders exercise their equity-conversion option.[2] The agreement also grants the lenders "a lien on any/all SonCav physical equipment owned by SonCav on the Maturity Date" to secure the lenders' interest in "up to the

---

[1] ECF No. 1 at ¶ 28.

[2] ECF No. 1-2 at 196, ¶¶ 4–5 (signed loan agreement by plaintiffs Xavier and Myrna Cano).

amount of the Loan Repayment," so long as the lenders do not exercise their equity option under the agreement.[3]

When plaintiffs' loan terms expired in summer or fall of 2015, they demanded payment on the notes instead of exercising their equity-conversion options.[4] "Plaintiffs have not heard any news or updates of the status of their valid and demanded loans."[5] Plaintiffs allege that the Sonic Cav family of companies has no revenue and has only two remaining physical assets of any value: the Sonic Cav "units," which appear to be generator pumps.[6]

It appears that non-party Lithium Exploration Group (LEXG) has contracted with defendants to use or test one or both units.[7] Plaintiffs allege that this testing or use has and will continue to damage the units.[8] LEXG announced that it and defendants would be conducting unit testing in Houston, Texas, from December 5–14, 2016, and Sonic Cav and LEXG have repeatedly made known their intentions to move one or more of the units to LEXG's facilities in Canada at some point in the near future.[9]

---

[3] *Id.* at 196, ¶ 7.  Xavier Vilaro and Myra Cano's contract qualifies that, should the lender "need to exercise this lien, the Sonic Cavitation Generator pump itself may only be turned over in scrap metal form after having been melted down." *Id.*

[4] ECF No. 1 at ¶ 11; ECF No. 1-2 at 199 (demand from plaintiff Xavier Vilaro).

[5] *Id.* at ¶ 13.

[6] *Id.* at ¶ 20.  It appears there are two pumps, one for oil and the other for water.  ECF No. 3 at 10; ECF No. 1-2 at 216–18.

[7] ECF No. 1-2 at 221.

[8] ECF No. 3 at ¶ 17.

[9] *Id.* at ¶ 18.  Plaintiffs allege that "the contractual relationship between LEXG and Sonic Cavitation is for LEXG receiving exclusive technology distribution rights for non petro-chemical mining in Canada." *Id.*  Thus, it does not appear that defendants are transferring ownership of the unit(s) to LEXG or taking some other action to wipe out plaintiffs' security interests, just that LEXG plans to use the pump(s) there.  See ECF no. 1-2 at 221–22 (response from LEXG counsel to plaintiffs' counsel explaining that LEXG is not claiming an ownership interest in "the Crude Oil Prototype" and that, if plaintiffs' loan agreements *do* give them a security interest in the crude oil prototype, as opposed to in the water-testing unit, the parties' interests still may be harmonious).

Plaintiffs seek a declaratory judgment from this court declaring that the bridge-loan agreements are valid and that plaintiffs have ownership interests in the Sonic Cav units, and they request a preliminary injunction enjoining defendants from using or testing the units and from relocating them.[10]  The record reflects that defendants have not yet been formally served with a summons or the complaint.

## Discussion

### A.   Standard to Obtain Temporary Injunctive Relief Without Notice

District courts "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" only when "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[11]  Plaintiffs have not met this standard.

Plaintiffs' complaint is not verified.[12]  Plaintiffs' counsel states in her declaration that the plaintiffs will be irreparably harmed if defendants are not restrained from testing or relocating the units.  But even if counsel has personal knowledge of this information and this injury were irreparable, plaintiffs have not shown that this injury will result *before* defendants can be heard in opposition.  Plaintiffs' counsel does not identify in her declaration when she anticipates the units will be moved to Canada or explain why that relocation would cause plaintiffs irreparable harm, and plaintiffs do not allege that defendants plan to transfer any ownership interest in the units, only that they plan to physically relocate them.  The complained-of testing from December 5–14 has already taken place, and plaintiffs admit in their complaint that past damage to the units from testing has been or is being repaired, so it does not appear likely that future testing or use will result in destruction of the units leaving plaintiffs unable to claim these units as collateral.

---

[10] ECF No. 1 at ¶ 52.

[11] FED. R. CIV. PROC. 65(b)(1) (emphasis added).

[12] *See* ECF 1.

Additionally, plaintiffs' counsel has not satisfactorily provided the certification required under FRCP 65(b)(1)(B). Counsel states in her declaration that notice should not be required because the units are "immediately at risk of damage and of being transferred to Canada, and the Defendants are a pre-revenue insolvent start up," making it imperative to have the requested TRO issued on an ex parte basis.[13] Though she represents that she gave notice to non-party LEXG, counsel does not claim that she gave notice of the application to defendants or adequately explain why notice should not be required.[14]

B.  **Standard to Obtain Temporary Injunctive Relief**

The legal standard for issuing a temporary restraining order and the legal standard for preliminary injunctive relief are "substantially identical."[15] In *Winter v. Natural Resources Defense Council, Inc.*, the Supreme Court clarified that the standards "require[ ] a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that [a temporary restraining order] is in the public interest.'"[16] "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."[17]

---

[13] ECF No. 3-1 at 3.

[14] Plaintiffs' supporting declaration also does not comply with this district's local rules for emergency motions because it does not list the office addresses and telephone numbers of all affected parties. L.R. 7-4.

[15] *See Stuhlbarg Intern. Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the "analysis is substantially identical for the injunction and the TRO").

[16] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

[17] *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting with emphasis *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

The second *Winter* factor requires the plaintiffs to demonstrate that they are likely to suffer irreparable harm if not granted a temporary restraining order. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages."[18] "Those seeking injunctive relief" must do more than just state or argue that they will suffer irreparable harm, they "must proffer evidence sufficient to establish a likelihood of irreparable harm."[19]

To support their irreparable-harm argument, plaintiffs allege that the units are "unique and one of a kind,"[20] so they will suffer irreparable harm if the units are destroyed or relocated. But plaintiffs have not demonstrated that they hold any ownership interest at all in the patented technology or the completed, operational pump—they instead have liens on the property up to the amount of their investments plus interest. Thus, it appears that money damages could make plaintiffs whole.[21]

Though plaintiffs do not actually request monetary damages or cite to the applicable case law, they appear to argue that they will suffer irreparable harm because an award of damages would be

---

[18] *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

[19] *Herb Reed Enter., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1251 (9th Cir. 2013), *cert. denied*, 135 S.Ct. 57 (2014).

[20] ECF No. 3 at 14.

[21] Even if plaintiffs had some interest in the operational pumps and there was no adequate remedy other than preserving their use, plaintiffs' counsel's affidavit stating that the testing "has caused damage to the physical assets on multiple previous occasions, and such testing currently risks serious damage to the Defendants' only remaining physical assets," would not suffice to show irreparable harm to justify an injunction enjoining the testing. This is especially true because plaintiffs also allege that the pumps have previously been damaged in testing, but have been repaired. Plaintiffs allege that they were damaged in February and March 2014 and again in June and July 2015 and make no effort to explain why the danger to the units is any greater now. ECF No. 1 at ¶ 17. Regardless, there is still no showing that relocating the units to Canada would irreparably harm plaintiffs.

inadequate due to defendants' impending insolvency.[22] The Ninth Circuit has held that district courts have the authority to issue a preliminary injunction to preserve the possibility of an equitable remedy, or to protect an eventual money judgment if "the plaintiff can establish . . . the impending insolvency of the defendant[s] or that [the] defendant[s] ha[ve] engaged in a pattern of secreting or dissipating assets to avoid judgment."[23]

Plaintiffs submit bank statements showing that Sonic Cavitation LLC did not have sufficient funds in two accounts to cover its outstanding obligations as of August 201**5**,[24] leaving the units as the only physical assets available to satisfy defendants' loan obligations. But plaintiffs did not submit any evidence of the current financial condition of any of the defendants or offer evidence tending to show that the units or these accounts are defendants' sole assets against which plaintiffs could execute a judgment if they prevail in this action. Plaintiffs' evidence is not sufficient to demonstrate the deepening insolvency of any defendant or a pattern of secreting or dissipating assets to avoid judgment by any defendant of the type that would allow me to conclude that an eventual monetary award would be inadequate.[25]

---

[22] Plaintiffs argue that "[t]he [d]efendants have no revenue, and no other assets for [p]laintiffs to satisfy the ongoing harm to their interests in the [units] through actual monetary damages, the harm is irreparable, and can only be prevented through injunctive relief." ECF No. 3 at 14.

[23] *In re Estate of Ferdinand Marcos, Human Rights Litig.*, 25 F.3d 1467, 1476–80 (9th Cir. 1994) (*Estate of Ferdinand Marcos*).

[24] These records show that Sonic Cavitation LLC's Bank of America account had a balance of $22,251.71 on October 31, 2014, ECF No. 1-2 at 178–79; that its Bank of America account balance plummeted from $413,973.00 to $973 on August 1, 2015, through three separate transactions to two different bank accounts, which transactions plaintiffs allege were fraudulent, *id.* at 5–7; and its First Republic Bank account had a balance of $101,014.00 on August 31, 2015, *id.* at 8.

[25] *Estate of Ferdinand Marcos*, 25 F.3d at 1476–80. Plaintiffs also allege that defaults have been entered against Sonic Cavitation, LLC in a Nevada state court and the United States Federal Court for the District of Puerto Rico in suits alleging breach of contract, embezzlement, and fraud, but plaintiffs do not offer any court records from these lawsuits to allow me to determine their relevancy here, nor do plaintiffs allege that default judgments have been entered against defendants in these cases.

Based on this record, I find that the plaintiffs have not demonstrated that they will be irreparably harmed—as that term is understood in Ninth Circuit law—if the defendants are not preliminarily restrained from using, testing, or relocating the units. Because the test for preliminary injunctive relief requires satisfaction of all four *Winter* factors, failure to satisfy any one of them—as plaintiffs have failed to demonstrate likelihood of irreparable harm here—requires denial of the request for a temporary restraining order.

Plaintiffs also have not shown a likelihood of success on the merits because they fail to state a plausible claim for relief and include only prayers for relief in their complaint. Declaratory judgment can, in some circumstances, be a stand-alone claim. But plaintiffs' declaratory-judgment claim fails as pled because they do not allege any facts to show that defendants are denying the validity of the loan agreements or plaintiffs' lien on the units, just that defendants have not responded to their requests for repayment of the loan money.

Plaintiffs also do not allege that they attempted to exercise their liens and that defendants refused. Even if they had, plaintiffs do not allege or offer evidence to show that Son Cav owned the physical units that plaintiffs now seek an injunction over "on the maturity date" of the loans as required by the loan agreements.[26] In fact, plaintiffs allege that plaintiffs' loan agreements were "well past their one-year terms" in late July 2015 when they demanded payment.[27] But the *first* Son Cav unit was not yet completed at that time.[28] Most of plaintiffs' loans matured as early as March and June of 2014—more than a year before either unit plaintiffs now claim a security interest in was completed,[29] and long before the emergency motion was filed.

Plaintiffs also fail to satisfy the balance-of-the-hardships requirement. Plaintiffs' claim that "[t]here is significant, irreversible harm to Plaintiffs if Defendants are not enjoined from engaging in testing and/or relocation of the Sonic Cavitation physical assets. Conversely, if the Court prevents

---

[26] ECF No. 1-2 at 196, ¶ 7.

[27] ECF No. 1 at ¶ 42.

[28] ECF No. 3 at ¶ 4.

[29] ECF No. 1 at ¶ 37.

Defendants from testing the equipment, it would merely maintain the status quo and uphold Defendants to existing contractual obligations."[30]  But nothing in the loan agreements forbids defendants from using, testing, or leasing out the units, and the record reflects that a third party has apparently contracted with defendants to *use* one or more of the units.  Rather than maintaining the status quo, the requested injunction would disrupt defendants' contractual obligations to third parties without allowing them a chance to be heard.

## Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiffs' ex parte emergency motion for a temporary restraining order **[ECF No. 3] is DENIED.**

Dated this 19th day of December, 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[30] ECF No. 3 at 18.